Closed
11/5/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**ORIGINAL**

-------------------------------------------------------- x

UNITED STATES OF AMERICA,       :

            Plaintiff,       :

                             :        07 Civ. 9704    (RJH)

      v.                     :

                             :        **CONSENT DECREE** SDNY
                                      DOCUMENT
MADISON SQUARE GARDEN, L.P.,  :       ELECTRONICALLY FILED
RAINBOW MEDIA HOLDINGS, L.L.C., and  :       DOC #: 2
CABLEVISION SYSTEMS CORP.,    :       DATE FILED: 11/5/07

            Defendants.      :

-------------------------------------------------------- x

        WHEREAS, numerous individuals with disabilities ("complainants") as defined by the

Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and the

Department of Justice's implementing regulations, 28 C.F.R. Part 36, have filed complaints with

the Department of Justice alleging violations of the ADA, including, among other things, a

failure to remove architectural barriers to access affecting individuals with disabilities at

Madison Square Garden (the "Garden") where such removal is readily achievable;

        WHEREAS, complainants, in particular, allege that, in the sporting arena (the "Arena"),

the performance theater (the "Theater"), and other locations within the Garden, defendants

Madison Square Garden, L.P., Rainbow Media Holdings, L.L.C., and Cablevision Systems

Corporation (collectively, "Defendants") have:  (i) not furnished sufficient or suitable

wheelchair, companion, and aisle transfer seating; (ii) failed to provide accessible entrances,

exits, restrooms, telephones, drinking fountains, counters and restaurants, suites, locker rooms,

and dressing rooms; (iii) failed to provide adequate or sufficient assistive listening devices; (iv)

failed to make reasonable modifications to their policies, practices, and procedures that are

necessary to afford individuals with disabilities equal access to the goods, services, and

accommodations offered at the Garden; and (v) instituted ticketing policies that are

discriminatory and afford wheelchair users inferior rights as ticket holders;

WHEREAS, plaintiff United States of America (the "Government") has investigated

those complaints under the authority granted by the ADA, 42 U.S.C. § 12188, and its

implementing regulations, 28 C.F.R. § 36.502;

WHEREAS, the Government's investigation included site inspections and surveys

covering all areas of the Garden facilities, including entrances, corridors, interior ramps, public

restrooms, drinking fountains, locker rooms, dressing rooms, suites, concession areas, press

areas, eating counters, ticketing and reception areas, public telephones, food courts, bars and

restaurants, and the seating areas in the Arena and Theater;

WHEREAS, the ADA was enacted to address a "serious and pervasive social problem" of

"discrimination against individuals with disabilities" in public accommodations, employment,

transportation, and other areas of public life, 42 U.S.C. § 12101(a);

WHEREAS, in passing the ADA, Congress expressly found that "individuals with

disabilities continually encounter various forms of discrimination," including "the discriminatory

effects of architectural, transportation and communication barriers" and "relegation to lesser

services, programs [and] activities," *id.*;

WHEREAS, Title III of the ADA bans discrimination against persons with disabilities by

owners or operators of places of public accommodation, 42 U.S.C. § 12182(a), and establishes an

ongoing requirement by such owners and operators to, among other things, remove architectural

barriers to access where such removal is "readily achievable," *id.* at § 12182(b)(2)(A)(iv),

28 C.F.R. § 36.304; provide alternative methods to make goods and services available where it is

deemed not readily achievable to remove barriers, 42 U.S.C. § 12182(b)(2)(A)(v), 28 C.F.R.

§ 36.305; make required alterations to facilities readily accessible to and usable by individuals with disabilities to the maximum extent feasible, 42 U.S.C. § 12183(a)(2), 28 C.F.R. §§ 36.402-404; provide appropriate and necessary auxiliary aids and services, 42 U.S.C. § 12182(b)(2)(A)(iii), 28 C.F.R. § 36.303; and reasonably modify policies and practices so as to ensure "full and equal enjoyment" of their goods and services by individuals with disabilities, 42 U.S.C. §§ 12182(a) and 12182(b)(2)(A)(ii), 28 C.F.R. §§ 36.201 and 36.302;

WHEREAS, the Government, contemporaneously with this Consent Decree, has filed a complaint seeking to enforce provisions of the ADA with respect to the Garden against Defendants under Title III of the ADA, 42 U.S.C. §§ 12181 *et seq.*; the implementing regulations, 28 C.F.R. Pt. 36; and the Standards for Accessible Design, 28 C.F.R. Pt. 36, App. A (the "Standards");

WHEREAS, the Government alleges that Defendants violated Title III of the ADA by failing to remove more than 3,000 architectural barriers to access at the Garden where such barrier removal is readily achievable, or, where such barrier removal is not readily achievable, by failing to make goods and services at the Garden available through readily achievable alternatives to barrier removal; by failing to have sufficient numbers of wheelchair seating locations, companion seating locations and designated aisle transfer seats that are dispersed throughout the seating areas, that are readily accessible to, and usable by, individuals with disabilities, and that provide lines of sight and choices of admission prices comparable to persons without disabilities; by failing to provide adequate or sufficient assistive listening devices; and by failing to make reasonable modifications to policies, practices, or procedures at the Garden, including providing individuals with disabilities equal access to tickets;

WHEREAS, the Garden, which includes establishments located within the Garden, is a place of public accommodation as defined in the ADA, 42 U.S.C. §§ 12181(7), 12182, and its implementing regulations, 28 C.F.R. § 36.104, because its operations affect commerce, and the Garden is a facility that includes an arena, a theater, restaurants, bars, beverage and merchandise concessions, clubs, amusements, and media facilities, 42 U.S.C. §§ 12181(7)(B), (C), (D), (E), 12182; 28 C.F.R. § 36.104;

WHEREAS, defendant Madison Square Garden, L.P., is a wholly owned subsidiary of defendant Rainbow Media Holdings, L.L.C., which in turn is a wholly owned subsidiary of defendant Cablevision Systems Corporation;

WHEREAS, Defendants own, control, and operate the Garden, and Defendants are therefore a public accommodation as defined by 28 C.F.R. § 36.104;

WHEREAS, Defendants deny liability for any violation of Title III of the ADA with respect to the Garden and/or any other applicable law regarding the rights of individuals with disabilities and further contend that they have taken various steps to provide accessibility at the Garden within the limitations presented by the age of the facility and its unique design;

WHEREAS, Defendants have appeared and consented to the entry of this Consent Decree without admitting the allegations of the complaint or any issue of fact or law to demonstrate their commitment to complying with Title III of the ADA;

WHEREAS, Defendants have represented that they intend to either relocate the Garden to a new facility or, in the alternative, undertake a significant renovation of the existing Garden;

WHEREAS, based upon that representation, the parties seek herein to afford immediate benefits to individuals with disabilities, while also addressing the contingencies to which such a representation gives rise, namely, (i) the construction of a new facility at another location to

replace the existing Garden; (ii) a substantial renovation of the existing Garden; and (iii) the

inability to execute the planned relocation or renovation in accordance with Defendants'

anticipated schedule;

WHEREAS, Defendants represent that they are committed to making a relocated or

renovated Garden fully compliant with the ADA and all applicable regulations;

WHEREAS, pending relocation or renovation, Defendants will implement certain

changes to the existing Garden that will, among other things, benefit individuals with disabilities

attending events at the Garden during the 2007-08, 2008-09 and 2009-10 basketball and hockey

seasons;

WHEREAS, should the planned relocation or renovation not occur in accordance with

Defendants' anticipated schedule, Defendants are committed to making additional changes to the

Garden going forward, beginning with the 2010-11 season, subject to good faith negotiations

with the Government; and

WHEREAS, the Government and Defendants agree that the entry of this Consent Decree,

without further litigation at this time, is in the public interest;

NOW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 42 U.S.C. § 12188 and

28 U.S.C. §§ 1331 and 1345.

## II. APPLICATION AND PARTIES BOUND

2.      This Consent Decree applies to, and is binding upon, the Defendants and the

Government.  This Consent Decree also applies to and binds any and all successors in interest

and assignees of Defendants, which shall have a duty to notify all successors in interest and

assignees of this Consent Decree.  The undersigned representatives of the parties certify that they

are authorized to enter into and consent to the terms and conditions of the Consent Decree and to

execute and legally bind the parties to it.

### III.  GENERAL INJUNCTIVE RELIEF

3.      Defendants, as well as their officers, agents, servants, employees, successors and

assigns, are permanently enjoined from violating Title III of the ADA with respect to the Arena

and any new facility constructed by or on behalf of any Defendant to serve as a sporting arena,

performance theater, or both.

### IV.  SPECIFIC RELIEF

### A.      WHEELCHAIR AND COMPANION SEATING LOCATIONS

4.      Defendants shall provide or install wheelchair and companion seating locations at

the Arena as set forth in paragraphs 5 through 8 below.  *See* Standards §§ 4.1.3(19)(a), 4.33.1,

4.33.2, 4.33.3, 4.33.4, and Fig. 46.  The Arena has numerous seating configurations, each of

which affects the available seating locations.  The primary configurations for the Arena are

designed to accommodate basketball, hockey, and concerts.  The Arena, however, can also be

configured for, among other things, boxing, the circus, tennis, horse shows, ice shows, track and

field, wrestling, and dog shows.  While the provisions below generally focus on the basketball,

hockey and concert configurations, Defendants shall make the wheelchair and companion seating

locations set forth in paragraphs 5 through 8 available in all configurations that can accommodate

those seating locations.

5.      Each companion seat that Defendants are required to provide pursuant to this

Consent Decree shall be located in the same row and immediately adjacent, to the right or the

left, to the wheelchair location, and shall be of the same quality as the fixed seats provided in the

immediate area. High-quality padded folding chairs similar to those the Garden currently uses for floor seating shall be acceptable for use as companion seats. If a wheelchair user purchases more than one companion seat, Defendants shall offer the wheelchair user a location for the additional companion or companions in the same row if such location is available at the time of purchase.

6.    Defendants shall provide locations for wheelchairs and companion seats in the Arena as set forth below. The wheelchair and companion seating locations shall provide lines of sight over both seated and standing spectators comparable to those enjoyed by persons without disabilities in the same area. The parties agree that the seating locations provided in Sections 95 and 97, set forth below in paragraphs 8.c and 8.d, provide sight lines for the hockey and other rink-sized configurations substantially equivalent to other seating locations in those sections, and provide comparable sight lines in all other configurations. All wheelchair and companion seating locations required pursuant to this Consent Decree shall: (i) adjoin an accessible route, which for the purposes of this paragraph means a route that complies with the barrier removal set forth in paragraphs 12 and 13 and Exhibits A and B; (ii) be level; and (iii) comply with the Standards. It will be sufficient for Defendants to provide one accessible means of egress for each seating location required pursuant to this Consent Decree.

7.    Defendants shall provide locations for wheelchairs and companion seats in the Arena as follows:

a.    For all seating configurations that permit seating on the Arena floor, Defendants shall provide 2 wheelchair and 2 companion seating locations on the Arena floor. For the basketball seating configuration, those seats shall be provided no later than November 4,

2007. For all other seating configurations that permit seating on the Arena floor, those seats shall be provided no later than January 31, 2008.

b.    For the hockey and other rink-sized seating configurations, Defendants shall provide 2 wheelchair and 2 companion seating locations rink-side no later than January 31, 2008.

c.    For the basketball seating configuration, these locations shall be front-row, court-side and may be arranged as single wheelchair locations (each with an adjacent companion seat). For all other seating configurations, these locations shall be front-row or rink-side and shall be grouped such that 2 wheelchair users can be seated together.

8.    Prior to October 1, 2008, Defendants shall provide additional locations for wheelchairs and companion seats in the Arena as follows:

a.    Defendants shall provide 2 wheelchair and 2 companion seating locations on the Arena floor, suitable for all seating configurations that permit seating on the Arena floor, and 2 wheelchair and 2 companion seating locations rink-side, suitable for the hockey and other rink-sized seating configurations. These locations shall be front-row or rink-side and shall be grouped such that 2 wheelchair users can be seated together.

b.    For basketball and hockey seating configurations, Defendants shall provide 4 wheelchair and 4 companion seating locations between Sections 68 and 69.

c.    Defendants shall provide 5 wheelchair and 5 companion seating locations, suitable for all seating configurations, in Section 95.

d.    Defendants shall provide 5 wheelchair and 5 companion seating locations, suitable for all seating configurations, in Section 97.

e.     Defendants shall provide 8 wheelchair and 8 companion seating locations, suitable for all seating configurations, in Sections 302-303.

f.     For basketball and hockey seating configurations, Defendants shall provide 7 wheelchair and 7 companion seating locations in Sections 316-317.  No less than 4 each of those wheelchair and companion seating locations shall also be suitable for the concert seating configuration.

g.     For basketball and hockey seating configurations, Defendants shall provide 7 wheelchair and 7 companion seating locations in Sections 327-328.  No less than 4 each of those wheelchair and companion seating locations shall also be suitable for the concert seating configuration.

h.     Defendants shall provide 10 wheelchair and 10 companion seating locations, suitable for all seating configurations, in Sections 421-422.

**B.     DESIGNATED AISLE SEATS IN THE ARENA**

9.     Defendants shall install seats that have no arm rests or are equipped with folding or removable armrests ("designated aisle seats") that will be dispersed throughout the Arena.  *See* Standards § 4.1.3(19)(a).  All of these designated aisle seats shall be on, or located within two rows of, a cross aisle.  Subject to the provisions below, Defendants shall provide a total of 60 designated aisle seats in the Arena.

a.     Defendants shall install 20 designated aisle seats in the Arena as soon as possible, but in any event no later than January 31, 2008.

b.     Prior to October 1, 2008, Defendants shall install another 40 designated aisle seats in the Arena.  Defendants shall provide written notice of the planned locations of those 40 designated aisle seats no less than 90 days before installing such seats, and the dispersal of the

seats is subject to approval by the Government. The Government shall respond in writing to Defendants' planned locations for the 40 additional designated aisle seats within 45 days of receiving Defendants' written notice.

10.    All of the designated aisle seats described in paragraph 9 shall be made available for sale to individuals with disabilities pursuant to the ticketing policies and pricing requirements set forth in Section IV.E of this Consent Decree, except that, to the extent any of those 60 designated aisle seats are subject to season subscriptions for Rangers or Knicks games, Defendants shall not be required to revoke or modify any subscriptions for the 2007-08 season. Each season thereafter, however, Defendants shall ensure the availability, by non-renewal of season subscriptions or displacement of current season subscribers or otherwise, of no less than 10 additional designated aisle seats per season until a total of 60 such seats are available to all Rangers and Knicks games. Notwithstanding this paragraph, if Defendants provide the Government with the documents specified in paragraph 41 before July 1, 2009, after that date Defendants shall not be required to displace any further season subscribers in order to make designated aisle seats available.

## C.    ARCHITECTURAL BARRIER REMOVAL (NON-SEATING)

11.    Defendants shall address certain of the Garden's architectural barriers to access, including barriers concerning alarms, elevators, restaurants and bars, counters, doors and doorways, assistive listening system, toilet rooms, protruding objects, accessible routes, signage, public telephones, ramps and slopes, drinking fountains, and other miscellaneous items, as set forth below.

12.    As soon as possible, but in no event later than January 31, 2008, Defendants shall remove the architectural barriers to access set forth in Exhibit A along an accessible route to the

seating locations described in paragraph 7 to ensure that individuals with disabilities have access

to the services, conveniences, amenities, and safety features of the Garden.

13.    Prior to October 1, 2008, Defendants shall remove the architectural barriers to

access set forth in Exhibit B along accessible routes to the seating locations described in

paragraph 8 to ensure that individuals with disabilities have access to the services, conveniences,

amenities and safety features of the Garden.  To the extent that modifications to the restrooms

located on Level 8 of the Arena necessitate a reduction in the fixture count for those restrooms,

the parties acknowledge that the proposed modifications are contingent upon receipt of required

approvals from local building and permitting authorities.  In the event that Defendants, despite all

reasonable efforts, cannot obtain such approvals, Defendants shall provide directional signage

indicating the location of the nearest accessible restroom in lieu of the specified modifications.

**D.    ASSISTIVE LISTENING SYSTEM**

14.    From the effective date of this Consent Decree and thereafter, Defendants shall

ensure that the Arena has an adequate and sufficient assistive listening system pursuant to

Standards § 4.1.3(19)(b).  Defendants represent that they currently have equipment to serve no

fewer than 50 individuals and shall obtain equipment to serve an additional 25 individuals by

January 31, 2008.  If requests made during or in advance of any event exceed the Arena's

available supply, Defendants shall immediately ensure that the Arena has the ability to provide

equipment to serve the greater of (i) an additional 25 individuals or (ii) the number of individuals

for whom such equipment has been requested provided that the request was made more than 20

days prior to the event.  Pursuant to those same terms, Defendants shall have an ongoing

obligation to provide additional equipment each time requests exceed the Arena's available

supply, until the Arena has equipment to serve 750 individuals.  Defendants shall also ensure the

accessibility of those systems by making them readily available at multiple locations throughout

the Garden.  Defendants shall prominently post signage concerning the availability of such

equipment at all entrances and ticket windows, as well as at locations throughout the Garden.

## E.    TICKET POLICIES AND PRICING

15.    Defendants shall ensure that their ticketing and pricing policies, practices, and

procedures for events at the Arena afford individuals with disabilities the opportunity to

participate in, and benefit from, the Garden's goods and services in a manner comparable to that

afforded to other individuals.

16.    Defendants shall give first preference for tickets for wheelchair locations and

companion seating for all events at the Arena to persons who request such seats for reasons

relating to a disability.

a.    Tickets for wheelchair locations and companion seating in each of the

price categories set forth in paragraphs 24 and 25 shall not be sold to any person, except a person

requesting such seats for reasons relating to a disability, until all other seats in that ticket price

category have been sold.

b.    Notwithstanding the preceding provisions of this paragraph, Defendants

may release 50% of the remaining wheelchair locations and companion seats in each price range

for sale to individuals without disabilities on the day that is the earlier of (i) seventy-two hours

after all other seats for the event have sold out, or (ii) two weeks before the event.  For purposes

of this sub-paragraph, an event shall be deemed sold out when only single seats remain available

for sale and the number of such single seats does not exceed 200.

c.    Notwithstanding the preceding provisions of this paragraph, one week

prior to the event, Defendants may release all but five of the remaining wheelchair locations and

five of the remaining companion seats for sale to individuals without disabilities. Defendants may select the locations to be retained.

        d.    Notwithstanding the preceding provisions of this paragraph, at 9:00 a.m. on the day prior to the event, Defendants may release all but two of the remaining wheelchair locations and two of the remaining companion seats for sale to individuals without disabilities. Defendants may select the locations to be retained.

        17.    Solely for events where tickets are placed on sale two weeks or less prior to the event, the foregoing procedure shall be modified as follows:

        a.    Tickets for wheelchair locations and companion seating in each of the price categories set forth in paragraphs 24 and 25 shall not be sold to any person, except a person requesting such seats for reasons relating to a disability, until all other seats in that ticket price category have been sold.

        b.    Notwithstanding the preceding provisions of this paragraph, Defendants may release 50% of the remaining wheelchair locations and companion seats in each price range for sale to individuals without disabilities on the day that is the earlier of (i) twenty-four hours after all other seats for the event have sold out, or (ii) after one-half of the time period between the date on which tickets are placed on sale and the date of the event has expired. For the purposes of this sub-paragraph, an event shall be deemed sold out when only single seats remain available for sale and the number of such single seats does not exceed 200.

        c.    Notwithstanding the preceding provisions of this paragraph, Defendants may release all but five of the remaining wheelchair locations and five of the remaining companion seats for sale to individuals without disabilities after three-fourths of the time period

between the date on which tickets are placed on sale and the date of the event have expired. Defendants may select the locations to be retained.

d.    Notwithstanding the preceding provisions of this paragraph, at 9:00 a.m. on the day prior to the event, Defendants may release all but two of the remaining wheelchair locations and two of the remaining companion seats for sale to individuals without disabilities. Defendants may select the locations to be retained.

18.    Defendants shall give first preference for tickets for designated aisle seats for all events at the Arena to persons who request such seats for reasons relating to a disability.  Tickets for designated aisle seats in each of the seating sections shall not be sold to any person, except a person requesting such seats for reasons relating to a disability, until all other seats in the respective section in which the designated aisle seat is located have been sold.

19.    Defendants shall ensure that individuals with disabilities are able to purchase tickets in the same manner that other persons can do so.  In particular:

a.    Defendants shall ensure that persons who contact the Garden's box office and/or its Disabled Services Department regarding the purchase of tickets for wheelchair locations, companion seating, and designated aisle seats for reasons relating to a disability are informed of all available such seating that has not been sold at that time.

b.    If tickets for an event are sold through Ticketmaster or other third-party ticket vendor, Defendants shall ensure that: (i) tickets for wheelchair locations, companion seating, and designated aisle seats may be purchased via telephone, all available Internet Web sites, and all new or developing technology; and (ii) persons requesting such seating for reasons relating to a disability are informed of all available such seating that has not been sold at that time.

20.    To the same extent the general public is permitted to purchase more than two seats for an event at the Garden, Defendants shall permit wheelchair users to purchase companion seats for each such event (to the extent available).

21.    Prior to October 1, 2008, all wheelchair locations, companion seats or designated aisle seats shall be offered on a game-by-game or event-by-event basis and shall not be offered on a season subscription basis.

22.    Beginning October 1, 2008, no more than 50% of the wheelchair locations, companion seats and designated aisle seats in each price range may be offered on a season subscription basis.

23.    Should Defendants deem it necessary under certain circumstances to condition the sale of wheelchair or designated aisle seating locations upon the establishment of the purchaser's mobility impairment, Defendants may submit a proposed policy to the Government no less than 60 days prior to the date upon which Defendants plan to implement such a condition. The Government may approve or disapprove such a policy in its sole discretion, and the policy shall not take effect unless approved by the Government.

24.    Prior to October 1, 2008, all wheelchair and companion seating locations in the Arena required by paragraph 7 shall be offered for sale at no more than $110, provided that, solely with respect to events for which a third-party promoter sets the ticket prices, those seating locations shall be offered for sale at or below the price for other seats located in the same row of the same section of the Arena.

25.    Beginning October 1, 2008, tickets for wheelchair and companion seating locations in the Arena shall be offered for sale at or below the price for other seats located in the same row of the same section of the Arena.

- 15 -

## F.    ADA COORDINATION AND PUBLICITY

26.    From the effective date of this Consent Decree and thereafter, Defendants shall continue to employ and designate one or more individuals to coordinate, among other things, efforts to assist persons with disabilities with respect to the accessibility of the Garden's services and facilities, including the purchase of tickets.  Defendants will have at least one representative from the Disabled Services Department available, either in person at the Garden or by telephone, on the day of every Garden event and during the entire duration of each Garden event.  Front-of-house staff (ushers, security, ticket takers and event supervisors) will be appropriately trained with respect to Defendants' policies and procedures concerning accessibility for individuals with disabilities.

27.    Defendants shall publicize the availability of wheelchair seating, companion seating, designated aisle seating, and assistive listening devices in all event schedules, pamphlets, programs, advertisements, and publications (including all of Defendants' Web sites) that contain information concerning seating at the Garden, and by posting signs at the ticket booths, ticket windows and all public entrances stating the availability of wheelchair seats, companion seats, designated aisle seats, accessible bathrooms, and assistive listening devices in the Arena once they are provided.  In addition, Defendants shall publicize the pricing and locations of wheelchair seating, companion seating, designated aisle seating, and assistive listening devices in all event schedules, pamphlets, programs, advertisements, and publications (including all of Defendants' Web sites) that contain pricing and location information concerning seating at the Garden. Furthermore, for calendar years 2008 through 2010, Defendants shall expend not less than $10,000 each year to advertise the availability of wheelchair seating locations, companion seats and designated aisle seats.  Such advertising shall expressly be directed, through appropriate print

- 16 -

publications, radio or television programs, or internet websites, to the mobility impaired

community, and may be directed, in whole or in part, through outlets owned or controlled by

Defendants ("in-kind advertising"). To the extent any advertising is "in-kind," Defendants'

compliance with this paragraph shall be measured by the fair market value of the advertising time

used. Defendants shall certify as to its expenditure of advertising funds and to the value of any

in-kind advertising as part of its annual certification under paragraph 35 of this Consent Decree.

## G.    MISCELLANEOUS

28.    Within 30 days after the date of the Court's entry of this Consent Decree,

Defendants shall deliver the sum of $55,000 to the Government, by wire transfer or check

payable to the United States Department of Justice.

29.    A violation of this Consent Decree shall be deemed a subsequent violation of the

ADA under 42 U.S.C. § 12188(b)(3) and 28 C.F.R. § 36.504(b).

## V. ALTERATIONS AND NEW CONSTRUCTION

30.    Any renovations or alterations, as defined in 42 U.S.C. § 12183(a)(2) and

28 C.F.R. § 36.402(b), made to the Garden not described in this Consent Decree shall comply in

all respects with the ADA, its implementing regulations, and the Standards, as such statute,

regulations, and Standards are in effect as of the date that physical renovations or alterations

begin.

31.    If Defendants determine to relocate the Garden to a location other than its current

site, or to construct a new facility to serve as a sporting arena, performance theater, or both, such

relocated or new facility shall comply in all respects with the ADA, its implementing regulations,

and the Standards, as set out in 28 C.F.R. § 36.401. To the extent that a portion of the new

facility constitutes an alteration to existing structure, those alterations shall comply with the applicable ADA provisions, implementing regulations, and Standards.

      32.     In the event of a change in the applicable ADA provisions, the implementing regulations, or the Standards during the duration of this Consent Decree, the parties shall meet and confer to determine whether, in accordance with paragraph 47, to seek jointly the approval of the Court to revise provisions of this Consent Decree affected by such change. Absent agreement, any party may bring the matter to the Court's attention for resolution.

      33.     In the event Defendants decide to either renovate or relocate the Garden as described in paragraphs 30 and 31:

          a.     Defendants shall provide to the Government, as soon as they are available, plans and specifications for the altered or new facility sufficient to determine whether that altered or new facility will comply with the ADA and this Consent Decree. Such plans and specifications shall include, at a minimum, the final schematic design, design development documents, and construction documents. Defendants shall provide 30 days' notice to the Government of the issuance of such materials.

          b.     No less than 180 days prior to the date upon which a renovated or relocated Garden is open to the public, Defendants shall provide to the Government all policies, practices, and procedures concerning individuals with disabilities that will be implemented and followed at the renovated or relocated Garden, including but not limited to ticketing policies.

          c.     The Defendants shall comply with all other reasonable requests from the Government for documents or information that would assist in determining whether the altered or new facility will comply in all respects with the ADA and this Consent Decree.

34.    In the event the Government concludes that the altered or new facility will not comply in all respects with the ADA and this Consent Decree, the Government shall provide Defendants with proposed changes it believes necessary for such compliance within 60 days of receipt of the materials set forth in paragraph 33. Defendants shall have 30 days to either accept the proposed changes or provide a written response setting forth in detail their objection to each rejected proposal. The Government may, at its discretion, thereafter bring the matter to the Court's attention for resolution.

## VI. STATEMENTS OF COMPLIANCE

35.    For each year that this Consent Decree remains in effect, Defendants shall, on or before April 1, submit to the Government an annual certification, under penalty of perjury, stating that Defendants have complied with the obligations set out in this Consent Decree. In the event Defendants contract out the work, they shall also provide the Government with a copy of any such contract as well as any certifications of completion or substantial performance submitted by the contractor.

36.    In the event that a condition of force majeure occurs to prevent compliance by Defendants with their obligations under this Consent Decree, Defendants shall promptly attempt to fulfill such obligations upon the cessation of the condition of force majeure. In the event that Defendants believe that a condition of force majeure exists, Defendants shall immediately notify the Government of such belief.

37.    Defendants are entering into this Consent Decree without acknowledging any fault, liability, or wrongdoing of any kind. Neither this Consent Decree nor any of its terms and provisions (including "whereas" clauses), nor any of the negotiations or proceedings connected with it, shall be construed as an admission of the truth of any of the assertions of the

Government, or of liability, fault, or wrongdoing of any kind whatsoever. Further, nothing in this Consent Decree shall be deemed or construed to be an admission by the Defendants that any of the descriptions or characterizations of the Garden or any conditions or aspects thereof set forth in the Consent Decree are accurate or constitute any failure to comply with the ADA or any other statute, rule, or regulation.

## VII.  RIGHT TO REVIEW COMPLIANCE

38.    Upon reasonable written advance notice to Defendants (through counsel), the Government and any persons acting on its behalf (including consultants) shall be permitted reasonable access to the Garden, at its current or any new location, or to any new facility constructed by the Defendants to serve as a sporting arena, performance theater, or both, to review compliance with this Consent Decree.

39.    The Government shall have the right to verify compliance with this Consent Decree, including the ticket policies and pricing provisions, through means available to the general public, including communications to determine the availability and pricing of tickets to events at the Garden.

## VIII.  RESERVATION OF RIGHTS

40.    Except as provided in this paragraph, nothing in this Consent Decree shall be construed as a waiver of the Government's right to seek relief against the Defendants under any statutes, regulations, or rules administered by the Government. With respect to the Arena, the Government will not, prior to July 1, 2009, seek further relief against Defendants other than that set forth in this Consent Decree for violations under Title III of the ADA, or any regulations and rules promulgated thereunder, based on facts relating to the allegations contained in the Government's complaint in this action.

41.    If, prior to July 1, 2009, Defendants present the Government with (i) a declaration made under penalty of perjury that Defendants have either entered into an agreement, which may be conditioned on certain government approvals, providing that Defendants shall relocate the Garden to a new facility at a location other than the Garden's current site by no later than October 1, 2013, or filed an application with the New York City Planning Commission permitting a substantial reconstruction of the Garden, which for the purposes of this paragraph means an alteration affecting no less than 9,500 seats in the Arena that shall commence no later than July 1, 2011 and be completed no later than October 1, 2013, and (ii) a copy of either the agreement into which they have entered or the application, then the Government will not seek further relief against Defendants with respect to the existing facility other than that set forth in this Consent Decree for violations under Title III of the ADA, or any regulations and rules promulgated thereunder, based on facts relating to the allegations contained in the Government's complaint in this action.  If for any reason, however, it is reasonably foreseeable that the planned relocation or renovation shall fail to meet the schedule set forth in this paragraph, then:  (i) Defendants shall immediately provide written notice to the Government of such expected failure; and (ii) the Government shall be free to proceed with this action based on the allegations contained in the Government's complaint and seek further relief against Defendants in addition to that set forth in this Consent Decree, provided that such further relief shall be implemented for the 2010-2011 basketball and hockey seasons and thereafter.

42.    If, by July 1, 2009, Defendants have not presented the Government with the materials concerning the relocation or substantial renovation of the Garden as set forth in paragraph 41, then the Government shall be free to proceed with this action based on the allegations contained in the Government's complaint and seek further relief against Defendants

in addition to that set forth in this Consent Decree, provided that such further relief shall be implemented for the 2010-2011 basketball and hockey seasons and thereafter. Such further relief may include, but shall not be limited to, the removal of additional architectural barriers to access identified by the Government and the installation of additional wheelchair seating locations and companion seating locations. Should the Defendants, after July 1, 2009, present to the Government relevant information concerning the relocation or substantial renovation of the Garden, then the Government shall, in its sole discretion, consider whether a modification of this Consent Decree is appropriate.

43.    Should the Government, on or after July 1, 2009, find it necessary to proceed with this action pursuant to the terms of paragraph 42, Defendants shall agree to expedited discovery and resolution of this action such that any relief granted may be implemented, in whole or in part, in advance of the 2010-11 basketball and hockey seasons. Should the Government find it necessary to proceed with this action pursuant to the terms of paragraph 41, Defendants shall agree to expedited discovery and resolution of this action such that any relief granted may be implemented, in whole or in part, in advance of the next basketball and hockey season.

44.    Nothing in paragraphs 40 through 43 shall relieve Defendants of any other obligations set forth in this Consent Decree. Moreover, this Consent Decree in no way affects or relieves Defendants of their responsibility to comply with any federal, state, or local law or regulation.

45.    Nothing in the complaint or this Consent Decree shall be construed to preclude the Government from seeking relief against Defendants with respect to alleged violations of the ADA in the Theater and along the paths of travel that serve the Theater, provided, however, that, subject to the Government's reservation of rights in paragraphs 40 through 43, the Government

- 22 -

shall not seek further relief for those violations at the following locations that serve both the

Arena and the Theater: (i) along exterior paths of travel to the Garden's entrances; (ii) along the

paths of travel on the second level; (iii) the entrance, entry lobby and security area located in the

northwest quadrant of the first level of the Garden, which serves as the designated accessible

entrance to the Arena and also as an employee entrance; (iv) the bridge area located on the east

side of the Garden, which leads to the main lobby and box office; and (v) the elevators

designated "A" and "C." Prior to proceeding with any action concerning the Theater's

compliance with the ADA, the Government shall first negotiate in good faith with Defendants

concerning the Government's allegations.

## IX.  COSTS AND ATTORNEY'S FEES

46.     Each party shall bear its own costs and attorney's fees in this action.

## X.  MODIFICATION

47.     There shall be no modification of this Consent Decree without the written consent

of the parties and the approval of the Court.

48.     This Consent Decree represents the entire agreement between the parties.  The

Consent Decree supersedes any prior agreements, oral representations, or statements made

between Defendants and the Government.

## XI.  RETENTION OF JURISDICTION

49.     The Court shall retain jurisdiction of this action after the Court's entry of this

Consent Decree (a) to enforce or modify the provisions of this Consent Decree, (b) to resolve any

dispute that arises under the Consent Decree, and (c) to entertain any application and issue any

orders as may be necessary or appropriate in connection with subsections (a) and (b) of this

paragraph. In addition, the Court shall retain jurisdiction of this action should the Government proceed with its claims pursuant to paragraph 41 or 42.

50.    The parties shall make reasonable efforts to discuss and attempt to negotiate a resolution of any dispute relating to this Consent Decree before bringing the matter to the Court's attention for resolution.

51.    This action shall be dismissed upon: (i) the completion of any Garden relocation, new construction or renovation as set forth in paragraphs 30 and 31 and written notice to the Court from the Government of Defendants' full compliance with the terms of this Consent Decree; or (ii) final resolution of the Government's claims against Defendants should the Government elect to proceed with this action pursuant to paragraph 41 or 42.

## XII. EXECUTION OF CONSENT DECREE

52.    This Consent Decree may be executed in one or more original or telecopied counterparts, all of which together shall constitute one and the same original instrument.

SO ORDERED.

Dated: New York, New York
       November 2 , 2007

_____
                     , U.S.D.J.

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON 11-5-07

- 24 -

The parties hereby consent to the entry of the foregoing Consent Decree:


Dated: New York, New York
       November 1, 2007

                                          MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for Plaintiff
United States of America

By:     *Sean C. Cenawood*
          SEAN C. CENAWOOD
          JAMES L. COTT
          BENJAMIN H. TORRANCE
          Assistant United States Attorneys
          86 Chambers Street
          New York, New York  10007
          Telephone: 212.637.2705
          Fax: 212.637.2702

- 25 -

Dated: Indianapolis, Indiana
November 1, 2007

BARNES & THORNBURG, L.L.P.
Attorney for Defendants

By: _____

MARK R. OWENS
11 South Meridian Street
Indianapolis, IN 46204-3535
Telephone: 317.231.7459
Fax: 317.231.7433
CAROLYN DOPPELT GRAY
TERESA L. JAKUBOWSKI
750 17th Street, NW, Suite 900
Washington, D.C. 20006
Telephone: 202.289.1313
Fax: 202.289.1330

Dated: New York, New York
November 1, 2007

MADISON SQUARE GARDEN, L.P.

By: _____

4 Pennsylvania Plaza
New York, New York 10001

Dated: _____, New York
November 1, 2007

RAINBOW MEDIA HOLDINGS, L.L.C.

By: _____

200 Jericho Quadrangle
Jericho, New York 11753

Dated: _____, New York
November 1, 2007

CABLEVISION SYSTEMS CORPORATION

By: _____

1111 Stewart Avenue
Bethpage, New York 11714

Dated: Indianapolis, Indiana
~~October 31, 2007~~
*November 1, 2007*

BARNES & THORNBURG, L.L.P.
Attorney for Defendants

By:  _[signature]_

MARK R. OWENS
11 South Meridian Street
Indianapolis, IN 46204-3535
Telephone: 317.231.7459
Fax: 317.231.7433
CAROLYN DOPPELT GRAY
TERESA L. JAKUBOWSKI
750 17th Street, NW, Suite 900
Washington, D.C. 20006
Telephone: 202.289.1313
Fax: 202.289.1330

Dated: New York, New York
November 1, 2007

MADISON SQUARE GARDEN, L.P.

By:  _____

4 Pennsylvania Plaza
New York, New York 10001

Dated: Jericho, New York
November 1, 2007

RAINBOW MEDIA HOLDINGS, L.L.C.

By:  _____

200 Jericho Quadrangle
Jericho, New York 11753

Dated: Bethpage, New York
November 1, 2007

CABLEVISION SYSTEMS CORPORATION

By:  _____

1111 Stewart Avenue
Bethpage, New York 11714

- 26 -

Dated: Indianapolis, Indiana
October 31, 2007

BARNES & THORNBURG, L.L.P.
Attorney for Defendants

By: _____

MARK R. OWENS
11 South Meridian Street
Indianapolis, IN 46204-3535
Telephone: 317.231.7459
Fax: 317.231.7433
CAROLYN DOPPELT GRAY
TERESA L. JAKUBOWSKI
750 17th Street, NW, Suite 900
Washington, D.C. 20006
Telephone: 202.289.1313
Fax: 202.289.1330

Dated: New York, New York
November 1, 2007

MADISON SQUARE GARDEN, L.P.

By: _____

Steve Mills
President and COO, MSG Sports
4 Pennsylvania Plaza
New York, New York 10001

Dated: Jericho, New York
November 1, 2007

RAINBOW MEDIA HOLDINGS, L.L.C.

By: _____

200 Jericho Quadrangle
Jericho, New York 11753

Dated: Bethpage, New York
November 1, 2007

CABLEVISION SYSTEMS CORPORATION

By: _____

1111 Stewart Avenue
Bethpage, New York 11714

- 26 -

Dated: Indianapolis, Indiana          BARNES & THORNBURG, L.L.P.
       October 31, 2007               Attorney for Defendants

                              By:     _____
                                      MARK R. OWENS
                                      11 South Meridian Street
                                      Indianapolis, IN 46204-3535
                                      Telephone: 317.231.7459
                                      Fax: 317.231.7433
                                      CAROLYN DOFFELT GRAY
                                      TERESA L. JAKUBOWSKI
                                      750 17th Street, NW, Suite 900
                                      Washington, D.C. 20006
                                      Telephone: 202.289.1313
                                      Fax: 202.289.1330

Dated: New York, New York             MADISON SQUARE GARDEN, L.P.
       November 1, 2007

                              By:     _____

                                      4 Pennsylvania Plaza
                                      New York, New York 10001

Dated: Jericho, New York              RAINBOW MEDIA HOLDINGS, L.L.C.
       November 1, 2007

                              By:     _____
                                      Josh Sapan
                                      President
                                      200 Jericho Quadrangle
                                      Jericho, New York 11753

Dated: Bethpage, New York             CABLEVISION SYSTEMS CORPORATION
       November 1, 2007

                              By:     _____

                                      1111 Stewart Avenue
                                      Bethpage, New York 11714

- 26 -

Dated: Indianapolis, Indiana
October 31, 2007

BARNES & THORNBURG, L.L.P.
Attorney for Defendants

By:

MARK R. OWENS
11 South Meridian Street
Indianapolis, IN 46204-3535
Telephone: 317.231.7459
Fax: 317.231.7433
CAROLYN DOPPELT GRAY
TERESA L. JAKUBOWSKI
750 17th Street, NW, Suite 900
Washington, D.C. 20006
Telephone: 202.289.1313
Fax: 202.289.1330

Dated: New York, New York
November 1, 2007

MADISON SQUARE GARDEN, L.P.

By:

4 Pennsylvania Plaza
New York, New York 10001

Dated: Jericho, New York
November 1, 2007

RAINBOW MEDIA HOLDINGS, L.L.C.

By:

200 Jericho Quadrangle
Jericho, New York 11753

Dated: Bethpage, New York
November 1, 2007

CABLEVISION SYSTEMS CORPORATION

By:

Michael Huseby CFO
Executive Vice President
1111 Stewart Avenue
Bethpage, New York 11714

- 26 -